Brian Segee (Cal. Bar No. 200795)
Center for Biological Diversity
226 W. Ojai Ave., Ste. 101-442
Ojai, CA 93023-3278
Phone: (805) 750-8852
Email: bsegee@biologicaldiversity.org
*Pro Hac Vice*

Attorney for Plaintiffs

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA
# TUCSON DIVISION

| | |
|---|---|
| Center for Biological Diversity; and Maricopa Audubon Society, <br><br> Plaintiffs, <br><br> v. <br><br> U.S. Fish and Wildlife Service, *et al.*, <br><br> Defendants. | Case No.: 4:24-cv-146-RCC <br><br> **Plaintiffs' Reply Brief in Support of Motion for Summary Judgment and in Opposition to Defendants' Motion for Summary Judgment** |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................... 1

ARGUMENT ....................................................................................................................... 2

    I.    The Service Has a Legal Duty Under Sections 706(1) and 555(b) of the APA to Resolve the Center's Petition .................................................... 2

        A.    The Center Does Not Challenge the Substance of the Service's 12-Month Finding ............................................................................. 2

        B.    The Service's Unreasonable Delay in Resolving the Center's Petition Is Not Committed to Agency Discretion by Law .......... 4

    II.    The Service Has Unreasonably Delayed Its Final Response to the Center's Petition ................................................................................. 8

        A.    The Service's Delay Fails the Rule of Reason ............................ 8

        B.    The ESA's Statutory Scheme Further Supports a Conclusion that the Delay is Unreasonable ................................................. 11

        C.    No Competing Priorities Justify the Delay .............................. 12

    III.    A Court Imposed Deadline is Necessary and Within the Court's Authority ......................................................................................... 14

# TABLE OF AUTHORITIES

**Cases**

*Bennett v. Spear*,
  520 U.S. 154 (1997) .................................................................................................. 8

*Biodiversity Legal Found. v. Norton*,
  285 F. Supp. 2d 1 (D.D.C. 2003) .............................................. 3, 7, 8, 9, 11, 12

*Citizens to Pres. Overton Park v. Volpe*,
  401 U.S. 402 (1971) .................................................................................................. 4

*Ctr. for Biological Diversity v. Haaland*,
  No. 20-cv-1227, 2021 U.S. Dist. LEXIS 174259 (N.D. Ill. Sept. 14, 2021) . 14

*Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv.*,
  No. 19-cv-354-TUC-JAS, 2020 U.S. Dist. LEXIS 272159
  (D. Ariz. Nov. 24, 2020) ....................................................................................... 14

*Earth Island Inst. v. Regan*,
  553 F. Supp. 3d 737 (N.D. Cal. 2021) ...................................................... 15

*In re Am. Rivers & Idaho Rivers United*,
  372 F.3d 413 (D.C. Cir. 2004) ........................................................................ 5, 6, 9

*In re Barr Labs. Inc.*,
  930 F.2d 72 (D.C. Cir. 1991) ................................................................................ 13

*In re Cmty. Voice*,
  878 F.3d 779 (9th Cir. 2017) ........................................................................ 5, 9, 10

*In re Int'l Chem. Workers Union*,
  958 F.2d 1144 (D.C. Cir. 1992) ............................................................................ 11

*In re NRDC*,
  956 F.3d 1134 (9th Cir. 2020) ................................................................................ 9

*In re Pesticide Action Network N. Am.*,
  798 F.3d 809 (9th Cir. 2015) ................................................................................ 10

*Indep. Mining Co. v. Babbitt*,
  105 F.3d 502 (9th Cir. 1997) .................................................................................. 5

*Moghaddam v. Pompeo*,
  424 F. Supp. 3d 104 (D.D.C. 2020) ...................................................................... 6

*Norton v. S. Utah Wilderness All.*,
  542 U.S. 55 (2004) .................................................................................................... 2

*NRDC v. United States FDA*,
  884 F. Supp. 2d 108 (S.D.N.Y. 2012) ................................................................. 13

*Sierra Club v. U.S. Fish and Wildlife Serv.*,
　930 F. Supp. 2d 198 (D.D.C. 2013) ................................................................... 3

*Telecomms. Research & Action Ctr. v. FCC*,
　750 F.2d 70 (D.C. Cir. 1984) ..................................................................... 6, 8

*Tenn. Valley Auth. v. Hill*,
　437 U.S. 153 (1978) ........................................................................................ 9

*Vanda Pharms., Inc. v. United States FDA*,
　No. 1:22-cv-2775, 2024 U.S. Dist. LEXIS 13970 (D.D.C. Jan. 26, 2024) .... 14

*Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*,
　586 U.S. 9 (2018) ............................................................................................ 4

**Statutes**

5 U.S.C. § 706(1) ................................................................................................ 15

16 U.S.C. § 1531(b) .............................................................................................. 9

16 U.S.C. § 1533(a)(3)(A)(iii) ............................................................................... 5

16 U.S.C. § 1533(b)(3)(D)(ii) ................................................................................ 3

16 U.S.C. § 1536 ................................................................................................... 9

# INTRODUCTION

Seven years have already passed since plaintiff Center for Biological Diversity ("Center") petitioned the U.S. Fish and Wildlife Service ("Service") to revise its critical habitat designation for the endangered Mount Graham red squirrel. As Defendants acknowledge in their opening brief, not only is the Service yet to resolve that petition, but such resolution is, at best, several more years away.

The Service, in fact, has no specific timeline for *ever* rendering a decision. Nor does it believe that such decision is even required, arguing that it "has done all that it is required to do under the ESA" by issuing the 12-month finding, and that the finding is "committed to agency discretion by law." That argument, however, has no relevance to the Center's claim. As explained in the Center's opening brief, and simply left unaddressed by Defendants, it is section 555(b) of *the Administrative Procedure Act* that requires that the Service definitively resolve the Center's petition, either by initiating a critical habitat rulemaking or issuing a denial. Pls.' Br. at 13-16.

The Service's attempts to justify its egregious delay also fall short. Contrary to its arguments, the fact that this case involves an endangered wildlife species rather than human health or welfare does not render the delay any less unreasonable. The agency's reliance on its National Workplan priorities is also unconvincing since, as the Center's opening brief explained, the squirrel's much-needed critical habitat revision has not even been given a spot on that list after already waiting seven years.

In sum, the Service's failure to resolve the Center's petition, with no discernable end in sight, is a quintessential example of agency action "unreasonably delayed." This unlawful delay would best be addressed by an order from the Court requiring a decision within an expeditious timeframe of six months.

# ARGUMENT

## I. The Service Has a Legal Duty Under Sections 706(1) and 555(b) of the APA to Resolve the Center's Petition

The Center's sole claim in this suit is that the Service has unreasonably delayed its resolution of the Center's 2017 petition to revise critical habitat for the endangered Mount Graham red squirrel. Supreme Court precedent affirms that an unreasonable delay claim under section 706(1) of the APA is available where "an agency failed to take a *discrete* agency action that it is *required to take*." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004) ("*SUWA*") (emphasis in original). The Center's opening brief explained how those criteria are met here, where APA section 555(b) mandates that an agency "shall" "conclude a matter presented to it" "within a reasonable time." Pls.' Br. at 11-16.

Defendants' brief simply does not respond to the Center's argument that the Service's duty under the APA to issue a final response to its petition meets the two-part *SUWA* "discrete" and "required" test. And remarkably, it does not provide a single citation to section 555(b). Instead, Defendants assert that the Center's unreasonable delay claim fails because both "the substance" and "the timing" of the Service's 12-month finding are "committed to agency discretion by law" pursuant to APA section 701(a)(2). Defs.' Br. at 2. As explained in detail, neither facet of this argument withstands scrutiny.

### A. The Center Does Not Challenge the Substance of the Service's 12-Month Finding

The Service's argument regarding the substance of the decision is easily disposed of. As Defendants acknowledge, the Center does *not* challenge the substance of the Service's 12-month finding, but its unreasonable delay in completing the identified predicate actions and

1 providing a definitive response to the petition. Defs.' Br. at 1 ("Plaintiffs' sole
2 claim in this suit [alleges] that the Service has unreasonably delayed its
3 final response to the Center's 2017 petition."). Despite this acknowledgment,
4 Defendants nonetheless attempt to muddy the waters in relation to the
5 Center's unreasonable delay claim by relying on caselaw addressing
6 substantive challenges not at issue in this case: *Biodiversity Legal Found. v.*
7 *Norton*, 285 F. Supp. 2d 1 (D.D.C. 2003) ("*Norton*"), and *Sierra Club v. U.S.*
8 *Fish and Wildlife Serv.*, 930 F. Supp. 2d 198 (D.D.C. 2013) ("*Sierra Club*").
9      In *Norton*, plaintiffs argued that the Service had not lawfully
10 explained its "intent to proceed" where its 12-month finding delayed
11 proceedings on the petitioned critical habitat revision until "as soon as
12 feasible," and did not include "a concrete plan that sets forth how and when
13 the Service will actually undertake and carry on the needed revision." 285 F.
14 Supp. 2d at 9 (internal citations and quotations omitted). The court rejected
15 this claim, "conclud[ing] that [the Service] complied with ESA section
16 4(b)(3)(D)(ii) when it published the 12-Month finding." 285 F. Supp. 2d at 11.
17      Although the Service's 12-month finding at issue in this case also lacks
18 a concrete plan for action, the Center has not challenged the "content or
19 efficacy" of that finding or asserted a violation of 16 U.S.C. §
20 1533(b)(3)(D)(ii). *Norton*, 285 F. Supp. 2d at 10. Nor does the Center allege
21 that the finding was "arbitrary and capricious," or that it fails to meet the
22 best available science standard, as the plaintiffs did in *Sierra Club*. 930 F.
23 Supp. 2d at 206. The Center argues only that the agency has unreasonably
24 delayed its resolution of the critical habitat revision petition. Because the
25 Center has only presented the single claim that the Service has
26 unreasonably delayed its resolution of the Center's petition, Defendants'
27 arguments based on caselaw addressing substantive challenges to a Service
28

12-month finding on a critical habitat revision petition are irrelevant and unpersuasive.

### B. The Service's Unreasonable Delay in Resolving the Center's Petition Is Not Committed to Agency Discretion by Law

The Service's argument that the timing of the Service's resolution of the Center's petition is committed to agency discretion by law fares no better. As long recognized by the Supreme Court, section 701(a)(2) provides only "a very narrow exception" to the APA's general presumption of reviewability. *Citizens to Pres. Overton Park v. Volpe*, 401 U.S. 402, 410 (1971).

The Court recently reaffirmed the rareness of the exception in an ESA context, stating that in order "[t]o give effect to § 706(2)(A) and to honor the presumption of review," it "has read the exception in 5 U.S.C. § 701(a)(2) quite narrowly, restricting it to those rare circumstances where the relevant statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*, 586 U.S. 9, 12 (2018). In holding that a challenge to the Service's decision not to exclude critical habitat from designation pursuant to section 4(b)(2) was reviewable, the Court further explained that the "few cases" in which it has "applied the §701(a)(2) exception involved agency decisions that courts have traditionally regarded as unreviewable, such as the allocation of funds from a lump-sum appropriation, or a decision not to reconsider a final action." *Id.* at 23 (internal citations omitted). The Service's duty under APA section 555(b) to resolve the Center's critical

1 habitat revision petition is similarly not within any of those traditional
2 categories and is not otherwise committed to agency discretion by law.[1]

3     Although the Center has brought an APA unreasonable delay claim to
4 compel a final resolution of the petition, the Service instead focuses its
5 argument entirely on the ESA. In arguing that the Center's "claim of
6 unreasonable delay is not subject to judicial review," Defs.' Br. at 9, and that
7 "the ESA provides no meaningful standard against which to judge the
8 agency's exercise of discretion," Defs.' Br. at 10, Defendants fail entirely to
9 respond to the Center's primary allegation: as affirmed by extensive Ninth
10 and D.C. Circuit precedent, section 555(b) of the APA requires the Service to
11 conclude matters presented to it (here, either by grating the petition and
12 publishing a proposed rule, or by denying the petition) within a reasonable
13 time. Pls.' Br. at 14; *In re Am. Rivers & Idaho Rivers United*, 372 F.3d 413,
14 418 (D.C. Cir. 2004); *In re Cmty. Voice*, 878 F.3d 779, 785 (9th Cir. 2017);
15 *Indep. Mining Co. v. Babbi*tt, 105 F.3d 502, 507 n. 6 (9th Cir. 1997).

16     In its long overdue 12-month finding, the Service stated that "if
17 appropriate," it would initiate rulemaking to revise Mount Graham red
18 squirrel critical habitat, but only after it first completed a Species Status
19 Assessment ("SSA") and revised recovery plan. Even accepting Defendants'
20 argument that the Service's issuance of this 12-month finding fulfilled its
21 nondiscretionary duty under section 4(b)(3)(D)(ii) of the ESA, the Service has
22 yet to provide a definitive answer as to whether it will grant or deny the

---

[1] The ESA's provision of discretionary authority that the Service "may" revise a critical habitat "from time-to-time thereafter as appropriate," 16 U.S.C. § 1533(a)(3)(A)(iii), does not transform the agency's duty under the APA to resolve a critical habitat revision petition into one committed to agency discretion by law. See *Weyerhaeuser Co.*, 586 U.S. at 23 (noting that although "[t]he use of the word 'may' certainly confers discretion" on the Service, that discretion does not remove the agency's duty to meet other statutory mandates.).

1  Center's petition. Under section 555(b) of the APA, it remains obligated to do
2  so. See *Am. Rivers & Idaho Rivers United*, 372 F.3d at 418-419 (an agency's
3  "assertions that it is not obligated to initiate formal consultation under
4  section 7 … based on the Service's ESA actions are beside the point. FERC is
5  obligated *under the APA* to respond to the 1997 petition") (emphasis in
6  original).
7         While Defendants emphasize at length the ESA's lack of a definitive
8  deadline for resolving critical habitat revision petitions, as contrasted to
9  other petitions, Defs.' Br. at 10-13, this distinction was expressly
10 acknowledged and addressed in the Center's opening brief. Pls.' Br. at 14.
11 The uncontested fact that the ESA provides "no parameters on the
12 timeframe within which the Service must act after it signals how it intends
13 to proceed" in a 12-month finding, Defs.' Br. at 10, does not make the
14 Center's unreasonable delay claim unreviewable as an action committed to
15 agency discretion by law or supersede the agency's duty under APA section
16 555(b) to resolve the petition. See *Moghaddam v. Pompeo*, 424 F. Supp. 3d
17 104, 117 (D.D.C. 2020) ("There does not need to be a more specific timeframe
18 for a claim brought under the APA other than the reasonableness standard,
19 and the six [*TRAC*] factors … Defendants have provided no reason why this
20 standard does not apply in this case as well. As there are meaningful
21 standards and law to apply here, the committed to agency discretion
22 exception is inapplicable with respect to the timeframe."). Instead, as the
23 Center explained in its opening brief, the lack of a statutory deadline is in
24 fact a defining characteristic of unreasonable delay claims. See *Telecomms.*
25 *Research & Action Ctr. v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984) ("*TRAC*")
26 (outlining the "*TRAC* factor" approach to determining whether an agency
27 delay is unreasonable in relation to a statutory provision without specific
28 deadline).

Indeed, while the *Norton* court rejected plaintiffs' substantive challenge to the Service's 12-month finding (as discussed *supra* in section 1.A), the decision *also* expressly affirmed plaintiffs' ability to pursue the same unreasonable delay claim—brought under APA section 706(1) and based on section 555(b)—that the Center alleges here. 285 F. Supp. 2d at 12.

While acknowledging that "the court in *Norton* ultimately found that the Service had a duty to revise the [Cape Sable seaside] sparrow's critical habitat designation," Defendants argue that this "duty was predicated on explicit representations made as part of a multi-species recovery plan"—incorrectly implying that the court concluded that the Service otherwise did not have an APA duty to resolve the petition. Defs.' Br. at 13. Contrary to this implication, the court expressly found that "Congress requires the Service to review such petitions and to determine their merits on a timely basis" and that a "12-month finding on a citizen petition starts the clock of reasonable timeliness under the APA." *Norton*, 285 F. Supp. 2d at 11. And, unlike here, the Service itself acknowledged in that case that "the clock" on an unreasonable delay claim normally starts running on "the statutory deadline" for publishing the 12-month finding. *Id.* at 13.[2]

In short, the question faced by the court in *Norton* was whether, in the unique circumstances of that case, a statement in the multi-species recovery plan had triggered the Service's duty to respond to the critical habitat petition *earlier* than the duty otherwise would have been triggered by the 12-

---

[2] Contrary to Defendants' characterization, Defs.' Br. at 14, the Center does not argue that the Service's duty to revise the squirrel's critical habitat designation was triggered in 1990, when the Service first recognized that the existing designation was inadequate, but that it does further evidence that the Service's delay fails the rule of reason under the *TRAC* factors. Pls.' Br. at 20.

1  month finding deadline. The court's conclusion finding that the duty first
2  arose from the recovery plan statement made the delay at issue four rather
3  than three years. *Id.* at 14 (concluding recovery plan statement was "a
4  manifestation of [the Service's] intention finally to revise the critical habitat
5  designation to help save this bird from its near-certain demise.").[3]

6  Similarly, the fact that the ESA citizen suit does not provide a cause of
7  action, or an "explicit grant of judicial review," Defs. Br. at 11, for compelling
8  the Service to resolve a critical habitat revision petition does not help
9  Defendants' cause, as it is contrary to controlling Supreme Court precedent
10 holding that claims related to ESA implementation but not within scope of
11 citizen suit provision may be brought as APA claims. *Bennett v. Spear*, 520
12 U.S. 154, 175 (1997) ("Nothing in the ESA's citizen-suit provision expressly
13 precludes review under the APA, nor do we detect anything in the statutory
14 scheme suggesting a purpose to do so.").

## II. The Service Has Unreasonably Delayed Its Final Response to the Center's Petition

As detailed in the Center's opening brief, Pls.' Br. at 16-25, the Service has unreasonably delayed its resolution of the critical habitat revision petition as evaluated under the six-factor *TRAC* balancing test. *TRAC*, 750 F.2d at 80. The Service's brief fails to effectively counter this showing, and the accompanying agency declaration only serves to (inadvertently) further evidence the Service's unreasonable delay.

### A. The Service's Delay Fails the Rule of Reason

Although the APA does not establish any *per se* rule as to what length of time constitutes unreasonable delay, Defendants acknowledge that the

---

[3] Although the *Sierra Club* decision references an unreasonable delay claim at the outset of the decision, 930 F. Supp. 2d at 203, that claim is not otherwise mentioned or addressed in the opinion.

caselaw affirms that "a reasonable time for agency action is typically counted in weeks or months, not years." Defs.' Br. at 16. See *In re NRDC*, 956 F.3d 1134, 1139 (9th Cir. 2020) (quoting *Cmty. Voice*, 878 F.3d at 787 (quoting *Am. Rivers & Idaho Rivers United*, 372 F.3d at 419)).

      Defendants seek to distinguish this ample caselaw, stating that "recent decisions finding unreasonable agency delay have often relied heavily on risk to human health and welfare" and the present case thus draws a "sharp contrast" with those decisions. Defs.' Br. at 16-17. The implicit argument, seemingly, is that because this case involves the fate of an imperiled wildlife species rather than human welfare directly, interminable delay is excusable. Yet Congress has expressly entrusted the Service with the responsibility of preventing extinction in its enactment of the ESA, and thus, lengthy delays relating to ESA protections can indeed be unreasonable. *Am. Rivers & Idaho Rivers United*, 372 F.3d at 419-20 ("FERC's six-year-plus delay is nothing less than egregious," noting that the agency "neglected a petition seeking action under a law designed to 'halt and reverse the trend toward species extinction, whatever the cost.'") (citing *Tenn. Valley Auth. v. Hill*, 437 U.S. 153, 184 (1978); 16 U.S.C. §§ 1531(b), 1536).

      Defendants' brief also fails to respond to the Center's opening brief explanation that in considering the rule of reason, courts look not only to the delay that has already occurred, but how long it will likely continue and whether there is a definitive timeline for final action. *Norton*, 285 F. Supp. 2d at 16-17 ("An ambiguous, indefinite time frame for review of a petition can constitute unreasonable delay within the meaning of APA § 706(1).") (cleaned up)[4]; *In re Pesticide Action Network N. Am.*, 798 F.3d 809, 814 (9th

---

[4] Although the court in *Norton* ultimately concluded that the delay in that case had not yet "gone beyond the rule of reason," 285 F. Supp. 2d at 16,

Cir. 2015) ("Yet EPA does not offer a timetable for concluding or even initiating those proceedings. EPA's response isn't a 'concrete timeline' for resolving the petition—it's a roadmap for further delay."); *Cmty. Voice*, 878 F.3d at 787 ("EPA's delay here is into its eighth year, and EPA has not offered a 'concrete timetable' for final action, but only speculative dates four and six years in the future when it might take final action.").

Although Defendants accuse the Center of making "blanket statements" regarding the Service's lack of progress toward resolving the petition, Defs.' Br. at 18, the agency declaration accompanying Defendants' brief not only confirms that the Service has made little progress in the more than 3 years since it was compelled by litigation to issue the 12-month finding (which was itself issued 3 years late), but provides only indefinite and conditional timelines for completing the predicate actions and has no timeline at all for resolving the Center's petition.

The declaration states, for example, that Service biologists have been preparing an SSA for nearly four years ("since 2021"), but only recently completed an "initial draft" in July 2024. Whitlaw Decl. ¶ 5-6. Although the Service states that it "expects" to complete the SSA by September 30, 2025, it notes that this target date is "subject to changes in competing workload … budget requirements, and Service and Department of the Interior priorities." Whitlaw Decl. ¶ 11.

However, the SSA is only "the first part" of the "recovery planning process," which the Service has made a condition precedent to resolving the petition. Whitlaw Decl. ¶ 12. Although the Service had already produced a draft revised recovery plan in May 2011, it never finalized that revision "due to changes in workload prioritization," and will now start the process anew.

---

plaintiffs' petition had been filed only three years before, as opposed to the seven years that has already elapsed in this case.

Whitlaw Decl. ¶¶ 14-15. The Service optimistically states a "goal" of finalizing the revised recovery plan by September 30, 2026, but like the SSA timeline, this goal is "subject to changes in competing workload … budget requirements, and Service and Department of the Interior priorities." Whitlaw Decl. ¶ 16.

In sum, the declaration further illustrates the Service's unreasonable delay, as it provides only "speculative" and "indefinite" statements of "current" expectations of completion of the SSA and recovery plan. Given that the Service has already started and then abandoned a recovery plan revision process 14 years ago, there is nothing to suggest that the conditional "changes in priorities" will not occur again, particularly given the Service's position that it has *already* done all that it needs to do in response to the Center's petition.

Even if the Service meets its conditional and already protracted timeline for finishing the SSA and revised recovery plan, the agency still fails entirely to provide an estimated date for resolving the Center's petition or even commit to ever providing such decision. Instead, the declaration states only that it will "evaluate the function of critical habitat" and "if appropriate," revise the designation "if prudent and determinable." Whitlaw Decl. ¶ 17.

 The long length of delay that has already occurred, coupled with the Service's absence of any concrete, or even estimated timeline for concluding action on the Center's petition, fails to meet the rule of reason.

**B.    The ESA's Statutory Scheme Further Supports a Conclusion that the Delay is Unreasonable**

The "context of the statute which authorizes the agency's action" is another unreasonable delay factor. *Norton*, 285 F. Supp. 2d at 12 (quoting *In re Int'l Chem. Workers Union*, 958 F.2d 1144, 1149 (D.C. Cir. 1992)). In

arguing that this factor "also weighs against a finding of unreasonable delay," Defendants again attempt to make hay out of the ESA's lack of specific deadline for critical habitat revision petitions. Defs.' Br. at 17. Yet as discussed previously in this brief, *supra* I.B, and in the Center's opening brief, Pls.' Br. at 14, the lack of a specific statutory deadline is an inherent characteristic of unreasonable delay claims, not an indication that such claim is not available. Even in the absence of a specific statutory deadline, the ESA's broader context and goals are an additional factor weighing in favor of unreasonable delay here. See *Norton*, 285 F. Supp. 2d at 15 (acknowledging that although the ESA "appears to reflect a general congressional priority to listing actions over revisions to critical habitat," the Service is tasked under the ESA with "bring[ing] these species back from the brink so that they may be removed from the protected class, and it must use all methods necessary to do so.").

### C. No Competing Priorities Justify the Delay

The Service asserts that acting on the Center's petition will "undermine" and "disrupt [the] balance" of the Service's National Listing Workplan and even the ESA itself. Defs.' Br. at 20-21. Defendants further state their worry that the Center's suit will produce a "rushed decision," warn the court against "blindly advanc[ing]" a resolution of the petition, and fret over the possibility that the squirrel's critical habitat revision may jump to "the front of the line," Defs.' Br. at 25.

*Yet seven years after the petition's submission, the Service has yet to even give the Mount Graham red squirrel a spot in the line.* As Defendants note, the Service has updated the Workplan seven times since September 2016. Defs.' Br. at 21, n. 4. Throughout all these updates, the requested critical habitat revision has never been included on the Workplan, which currently includes actions for 331 species. Defs.' Br. at 24.

Defendants further justify the lack of action with an assertion that, in contrast to unlisted species or species without critical habitat designations, the squirrel "already receives the full measure of protections available under the ESA." Defs.' Br. at 23. Yet one of the primary bases of the Center's petition is that the current spruce fir forest designated as critical habitat has been largely destroyed, resulting in "catastrophic" declines in the squirrel's population, and that there are essentially no squirrels remaining in the designated area. Instead, almost all of the few remaining squirrels are in lower-elevation mixed conifer forest outside the designation. Thus, the species is in fact not receiving the "full measure of protections available under the ESA."

Defendants' attempt to analogize its Workplan priority argument to *In re Barr Labs. Inc.*, 930 F.2d 72, 74 (D.C. Cir. 1991), falls short. In that case, the agency had a 180-day statutory deadline for responding to generic drug applications, acknowledged that it took an average of twice that long, and expected that in the future, it could take four times as long. The court rejected plaintiff's attempt to create a "super-priority" for itself, which "would have effectively controlled the agency's generic drug approval process, benefitting one enterprise at the expense of others." *NRDC v. United States FDA*, 884 F. Supp. 2d 108, 119 (S.D.N.Y. 2012).

Here, the Service's delay is far longer, and unlike the plaintiff in *Barr Labs.*, who had a "place in line" amongst equally treated applicants, the Service here has continually excluded the squirrel entirely from Workplan priorities. In addition, unlike *Barr Labs.*, where the agency's delay was in large part caused by forces beyond its control, the Service in this case has created delay by tasking itself with additional, predicate actions before it resolves the Center's petition. See *Vanda Pharms., Inc. v. United States FDA*, No. 1:22-cv-2775, 2024 U.S. Dist. LEXIS 13970, *15 (D.D.C. Jan. 26,

1  2024) (refusing to defer to an agency priority argument given that "at least
2  some of FDA's delay stems from the agency's extra-statutory choices,"
3  including a "lengthy" process before determining whether to move to a
4  hearing).

5  Finally, Defendants' citations to recent cases upholding dates included
6  in its Workplan are of no help to their argument. In each of those cases, the
7  species at issue were all included on the Workplan, but plaintiffs sought
8  deadlines for action that were sooner in time than the Workplan date. See
9  *Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv.*, No. 19-cv-354-
10 TUC-JAS, 2020 U.S. Dist. LEXIS 272159, at *9 (D. Ariz. Nov. 24, 2020)
11 (ordering 12-month finding within three months rather than 30 days as
12 sought by plaintiffs); *Ctr. for Biological Diversity v. Haaland*, No. 20-cv-1227,
13 2021 U.S. Dist. LEXIS 174259, at *2 (N.D. Ill. Sept. 14, 2021) (ordering 12-
14 month finding within 34 rather than 12 months). In contrast, here, the
15 petitioned critical habitat revision has not even made it onto the Workplan
16 seven years after submission. The Service refuses to provide an estimated
17 date for that decision, and in fact argues that has already fulfilled all
18 statutory obligations with respect to the petition.

19 **III.  A Court Imposed Deadline is Necessary and Within the Court's
20      Authority**

21 In the event the Court upholds the Center's motion for summary
22 judgment, it should, respectfully, decline the Service's request to remand
23 "with instructions for further explanation." Defs.' Br. at 26-27. No "further
24 explanation" is needed, nor has the Center sought any, since, as explained, it
25 has not substantively challenged the Service's delay.

26 Defendants argue that their preferred course of action is "the only
27 available remedy under the APA." The APA, however, expressly directs a
28 reviewing court to "compel agency action unlawfully withheld or

unreasonably delayed." 5 U.S.C. § 706(1). As stated in one recent case, "[t]he question then is the timeline for remedy." *Earth Island Inst. v. Regan*, 553 F. Supp. 3d 737, 751 (N.D. Cal. 2021). Defendants also ignore the cases cited in the Center's opening brief ordering a decision within specific timeframes stricter than the timeframe sought here. Pls.' Br. at 25. The Court should order the Service to, consistent with the APA, provide a definitive response to the Center's petition within six months.

Respectfully submitted December 20, 2024.

<u>s/ Brian Segee</u>
Brian Segee (Cal. Bar No. 200795)
Center for Biological Diversity
226 W. Ojai Ave., Ste. 101-442
Ojai, CA 93023-3278
(805) 750-8852
bsegee@biologicaldiversity.org
*Pro Hac Vice*

Attorney for Plaintiffs
