**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Center for Biological Diversity, et al., | No. CV-24-00146-TUC-RCC |
| Plaintiffs, | **ORDER** |
| v. | |
| United States Fish and Wildlife Service, et al., | |
| Defendants. | |

Plaintiffs Center for Biological Diversity and Maricopa Audubon Society ("Plaintiffs" or "CBD") filed a Motion for Summary Judgment against Defendants U.S. Fish and Wildlife Service and Deb Haaland in her official capacity as Secretary of the Interior ("Service"). (Doc. 13.) The Motion for Summary Judgment asks the Court to order the Service to resolve Plaintiffs' 2017 Petition to revise the critical habitat for the endangered Mount Graham red squirrel—either by denying the Petition or revising the squirrel's critical habitat. (*Id.* at 33.) The Service filed a Cross-Motion for Summary Judgment. (Doc. 15.) The motions have been fully briefed and oral argument held.

**I.   HISTORY**

The Mount Graham red squirrel, found only in the Pinaleño Mountains of Arizona, was listed as endangered in 1987, with critical habitat designated in 1990. Despite scientific recommendations to include lower elevation, mixed-conifer forests, the Service limited the critical habitat designation to higher elevation, spruce-fir forests. Subsequent habitat destruction due to telescope construction, wildfires, and insect outbreaks have

impacted the squirrel's population,[1] and allegedly confined the squirrel to the lower elevation mixed-conifer forests.

On December 14, 2017, Plaintiffs submitted a Petition, asking the Service to revise the squirrel's critical habitat to include the lower elevation, mixed-conifer forests. Given no response, in April 2019, Plaintiffs sued to compel the Service to issue a 90-day finding. The 90-day finding was not issued until September 6, 2019. It conceded that there was substantial scientific or commercial information suggesting that a revision to the critical habitat may be warranted. 84 Fed. Reg. 46,927 (Sept. 6, 2019).

Over a year later, in November 2020, Plaintiffs filed a second suit to compel the required 12-month finding. As a result, on August 3, 2021, the Service submitted a 12-month finding that stated that once the Service completes a Species Status Assessment ("SSA") and a Revised Recovery Plan[2] it will then reconsider the squirrel's critical habitat, if deemed appropriate.

The Service initially projected it would finalize the SSA and Revised Recovery Plan by December 2022. Instead, the Service drafted a Revised Recovery Plan that was never finalized and must now be redone. The Service also drafted SSA report in July 2024, but it too was never finalized. Moreover, in May 2024, the Service published the National Domestic Listing Workplan for Fiscal Years 2024–2028 ("Workplan"), but the Workplan does not mention *any* reconsideration of the squirrel's habitat over the four-year period. Because the Service failed to complete either the SSA or the final Revised Recovery Plan, and because there is no indication a revision was forthcoming, Plaintiffs filed the instant lawsuit on September 20, 2024—three years after the issuance of the 12-month report and nearly seven years after the filing of the Petition.

---

[1] The Mount Graham squirrel is highly territorial, and each squirrel's domain is approximately eight acres. 52 Fed. Reg. at 20,994. The Service calculates the number of squirrels based on the number of "middens"—piles of cone scales saved by squirrels for food during times of scarcity. *Id.* The squirrel population went from 280 when it was listed as endangered in 1987, to 550 in the late 1990s, to 35 after the wildfires in 2017, and then recovered slightly to 109 in 2021, 156 in 2022, and dipped again slightly to 144 in 2023. (AR 1576-77, 1720, 1727, 1740.)

[2] "The recovery plan is a guidance document that outlines the anticipated recovered state of a listed species (*i.e.*, when it should no longer meet the definition of threatened or endangered species), along with a roadmap for how to get there." (Doc. 15-1 at 26.)

- 2 -

Plaintiffs argue that the Service's delay is "unreasonable," in violation of 5 U.S.C. § 555(b) of the Administrative Procedure Act ("APA"). Plaintiffs ask the Court (1) to declare that the Service has unreasonably delayed a determination of the Petition on the merits and (2) to direct the Service to provide a response within four months of the Court's order.

The Service filed a Cross-Motion for Summary Judgment, making three arguments. First, the Service claims the 12-month finding met the ESA requirements—it explained that the Service will complete a SSA and Revised Recovery Plan before it will reconsider critical habitat.  Second, the Service asserts that claims under the APA are precluded because there is a remedy available under the ESA. Third, the Service states the prioritization of its workload is within its discretion, as is the timeline for resolving the Petition, therefore the timing of any critical habitat revision is not subject to judicial review. Regardless, the Service asserts that it is diligently working on these tasks, which are prioritized alongside other ESA Section 4 actions. The Service contends that granting the Plaintiffs' proposed remedy would disrupt the Service's Workplan and undermine the goals of the ESA. The Cross-Motion for Summary Judgment asks the Court to defer to the Service. In the alternative, if the Court finds there was an unreasonable delay, the Service claims the proper remedy is to remand the matter directing the Service to provide further explanation.

In reply, Plaintiffs indicate it is not the substance of the 12-month report that they are challenging, but the unreasonable delay in resolving the Petition. Plaintiffs claim it is the APA requirement that the Service must either grant or deny the petition—not any ESA provision—that provides a means of relief. Moreover, Plaintiffs indicate that preclusion of judicial review is an exception to the rule, reserved for when "a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*, 586 U.S. 9, 12 (2018).  Here, Plaintiffs claim there is a meaningful standard for determining the reasonableness of delay—both under the APA (5 U.S.C. §§ 706(1) and 555(b)) and the TRAC factors established in *Telecomm. Rsch. and Action Ctr. v. F.C.C.* ("TRAC"), 750 F.2d 70, 80 (D.C. Cir. 1984).

**II.   ESA v. APA**

Plaintiffs state their APA claim requires that the Service decide the Petition on the merits within a reasonable time. The Service counters that an APA claim is inappropriate because there is another adequate remedy—a citizen suit under the ESA (for failure to act on a non-discretionary duty). The Service says under the ESA, it met the requirements of the 12-month finding because it stated how it would proceed and published its intention in the Federal Register pursuant to 16 U.S.C. § 1533(b)(3)(D)(ii). That is all that was necessary under the ESA, not a determination on the merits, the Service believes.

"[T]he APA does not independently confer jurisdiction on the district courts." *Gallo Cattle Co. v. U.S. Dep't of Agric.*, 159 F.3d 1194, 1198 (9th 1998). The APA can only provide relief where there is no other remedy available. *See* 5 U.S.C. § 704; *Bennet v. Spear*, 520 U.S. 154, 161–62 (1997) ("[T]he APA by its terms independently authorizes review only when there is no other adequate remedy in a court.") (citations and quotation marks omitted); *Bowen v. Massachusetts*, 487 U.S. 879, 903 (1988) ("Congress did not intend the general grant of review in the APA to duplicate existing procedures for review of agency action.").

"The APA requires that agencies 'within a reasonable time . . . shall proceed to conclude a matter presented to it.' . . . If agencies fail to do so, courts may 'compel agency action unlawfully withheld or unreasonably delayed.'" *Desai v. U.S. Citizenship and Immig. Servs.*, No. CV 20-1005 (CKK), 2021 WL 1110737, at *4 (D.D.C. Mar. 22, 2021) (quoting 5 U.S.C. § 706(1)); 5 U.S.C. §§ 555(b)). To compel an agency to act, there must be "a specific, unequivocal command placed on the agency to take a discrete agency action," and the agency must have "failed to take that action." *Vietnam Veterans of Am. v. Cent. Intel. Agency*, 811 F.3d 1068, 1075 (9th Cir. 2016) (citations and quotation marks omitted). "When a statute grants some degree of discretion to an agency as to the timing of a required action, thereby imposing merely a general duty of timeliness, suit should be brought as a claim for unreasonable delay under the APA." *Biodiversity Legal Found. v. Norton*, 285 F. Supp. 2d 1, 7–8 (D.D.C. 2003) (citations and quotation marks omitted).

Alternatively, the ESA's citizen-suit provision empowers "any person" to "commence a civil suit on his own behalf" against "the Secretary where there is alleged a failure of the Secretary to perform any act or duty under section 1533 . . . which is *not discretionary*." 16 U.S.C. § 1540(g)(1)(C) (emphasis added). "In order to impose a clear-cut nondiscretionary duty . . . a duty of timeliness must 'categorically mandat[e] that all specified action be taken by a date-certain deadline." *Biodiversity Legal Found.*, 285 F. Supp. 2d at 7 (quoting *Sierra Club v. Thomas*, 828 F.2d 783, 791 (D.C. Cir. 1987).

Within 12 months of a petition for which the Service has determined that revision of critical habitat may be warranted, the Service must decide "how it intends to proceed and to publish notice of such intention . . . ." *Biodiversity Leg. Found.*, 285 F. Supp. 2d at 10 (citing 16 U.S.C. § 1553(b)(3)(D)(ii)).

The Service's duty under the ESA is limited to indicating how the Service will proceed and publishing its intention in the Federal Register. Unlike other statutes, there is no ESA requirement that the Service resolve the critical habitat petition at any certain time. Thus, the Service has fulfilled its statutory duties under the ESA.

However, simply because the Service has met its duty under the ESA does not mean Plaintiffs have no recourse under the APA. Plaintiffs challenge the failure to dispose of the Petition, not the failure to meet the 12-month requirements. To find in favor of the Service's position would be non-sensical—it would allow the Service to indefinitely postpone a determination on the merits without recourse.

Plaintiffs viably raise an APA claim of unreasonable delay subject to judicial review. In other areas (e.g. species listing and delisting) Congress has required the Service determine whether the petition's action is warranted or not warranted *within* the 12-month finding. Here the lack of statutory guidelines about when and how the merits of the Petition should be determined makes the timing of a decision on the merits discretionary. A discretionary decision is not covered by the ESA. Meaning, the APA's requirement of a reasonable timeline applies.

///

///

### III. Judicial Review

The Service cites 5 U.S.C. § 701(a)(2), arguing that Plaintiffs' claim of unreasonable delay is not subject to judicial review because the "substance and timing" of its 12-month finding is at the Service's discretion. CBD asserts the exception to judicial review under § 701(a)(2) is narrowly applied to "agency decisions that courts have traditionally regarded as unreviewable." (Doc. 19 at 8 (quoting *Weyerhaeuser Co.*, 586 U.S. at 12).) CBD claims, the resolution of the Petition is not within any of those traditional categories and is reviewable.

The Supreme Court "has so long applied a strong presumption favoring judicial review of administrative action." *Weyerhauser Co.*, 586 U.S. 9, 23 (2018). "The presumption may be rebutted only if the relevant statute precludes review," or if the action is "committed to agency discretion by law." *Id.* (citation and quotation marks omitted). The exception to judicial review is read "quite narrowly" and applies only "to 'those rare circumstances where the relevant statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion.'" *Id.* (quoting *Lincoln v. Vigil*, 508 U.S. 182, 191 (1993)). Instances where agency decisions have been found unreviewable include "the allocation of funds from a lump-sum appropriation" and "a decision not to reconsider a final action." *Id.*

Whether the Service's delay in determining the merits of the Petition is unreasonable is subject to judicial review. There are no statutes precluding it, and the relevant law provides a meaningful standard for review—namely the TRAC factors.

### IV. TRAC Factors

Courts evaluate six factors when determining whether a delayed discrete action is unreasonable (called the TRAC factors). The considerations include:

(1) the time agencies take to make decisions must be governed by a "rule of reason,"

(2) Congressionally provided timetable or other indication of the speed with which it expects the agency to proceed,

(3) delays that might be reasonable in the sphere of economic regulation are

- 6 -

less tolerable when human health and welfare are at stake;

(4) the effect of expediting delayed action on agency activities of a higher or competing priority,

(5) the nature and extent of the interests prejudiced by delay, and

(6) impropriety on behalf of the agency.

*TRAC*, 750 F.2d at 80 (quotation marks omitted).

### a. TRAC FACTOR #1: Rule of Reason

The first TRAC factor, the "rule of reason" is the most important. *In re A Cmty. Voice*, 878 F.3d 779, 786 (9th Cir. 2017). While there is no steadfast rule as to what constitutes a reasonable delay, "a reasonable time for agency action is typically counted in weeks or months, not years," *In re Am. Rivers & Id. Rivers United*, 372 F.3d 413, 419 (D.C.C. 2004). Courts may consider future delay when determining reasonableness. *Biodiversity Legal Found.*, 285 F. Supp. 2d at 16–17 ("An ambiguous, indefinite time frame for review of a petition can constitute unreasonable delay within the meaning of APA § 706(1)") (citations and quotation marks omitted); *Cmty. Voice*, 878 F.3d at 787 (finding an eight-year delay with only speculative dates for a final action was unreasonable).

The Service's 12-month finding was three years late. Now, another three years after the finding, and nearly four years after starting the SSA, the Service estimates that the SSA will be done by September 30, 2025, but completion is dependent upon "competing workload for the biologists, personnel needs, budget requirements, and the Service and Department of the Interior priorities." (Whitlaw Decl., Doc. 15-2 ¶ 11.) The Service anticipates the Revised Recovery Plan will be done by September 30, 2026, but the date is also contingent on budget and priorities. (*Id.* ¶ 14–15.) The Service created a draft Revised Recovery Plan in 2011—nearly fourteen years ago—but has never finalized it because of other priorities. (*Id.*) Now so much time has passed that the Revised Recovery Plan is outdated, and the Service must start over again. (*Id.* ¶ 16.) Despite these anticipated dates, the Service provided *no* timeline as to when it will decide Plaintiffs'

Petition on the merits. The lengthy delay and lack of timeline weighs strongly in favor of finding the Service's delay is unreasonable.

### b. TRAC Factor #2: Statutory Timetable

The Service argues that the ESA does not include a specific timeline for deciding a petition for revision of critical habitat, therefore the timing of a determination on the Petition should be at the Service's discretion. The Service points to other statutes that require a determination at the time of the 12-month finding and asserts Congress could have included such limitations if it had intended the Service to proceed along a designated timeline. Plaintiffs counter that the absence of a statutory timeline provides the basis for a claim of unreasonable delay, it does not mean relief is unavailable.

"Congress requires the Service to review [] petitions [for revision of critical habitat] and to determine their merits on a timely basis. A 12-Month Finding on a citizen petition starts the clock of reasonable timeliness under the APA." *Biodiversity Lgl. Found.*, 285 F. Supp. 2d at 11.

Plaintiffs are correct, although there is no timeline and it is within the Service's discretion when to decide the Petition on the merits, this provides for a reasonableness standard, not an absence of a standard. Given the lengthy delay and fact that in other areas, such as listing and delisting, the determination on the petition is due within the 12-month finding, this factor weighs in favor of CBD.

### c. TRAC Factor #3: Human Health and Welfare and TRAC Factor # 5: Nature and Extent of Interests Prejudiced by Delay

Plaintiffs claim this factor weighs in their favor because the public has a "significant interest in avoiding extinction and treating listed species as the highest of priorities." (Doc. 13 at 32.) The Service states human health is not at risk, and moreover, because the squirrel is already protected it is not at risk of prejudice by delay.

Though not directly affecting human health and welfare, "the public can still have a significant interest in agency management that promotes such important values as wildlife." *Leigh v. Raby*, 726 F. Supp. 3d 1207, 1220 (D.C. Cir. 2024) (citing *Or. Nat. Desert Ass'n v. Bushue*, 644 F. Supp. 3d 813, 842 (D. Or. 2022), *appeal dismissed sub*

*nom. Or. Nat. Desert Ass'n v. BLM*, No. 23-25101, 2023 WL 5012123 (9th Cir. June 5, 2023).

This factor weighs moderately in favor of CBD. There is a human interest in preservation of a species; but this is not directly related to human health and welfare. However, given that concession in the 90-day finding that there was substantial scientific or commercial information suggesting that a revision to the critical habitat may be warranted, and the admitted changes in the higher elevation forest due to fire, insects, and development, a decision on the merits of the Petition serves the public interest in wildlife preservation and there is some evidence supporting the contention that further delay may negatively affect the squirrel population.

### d. TRAC Factor #4: Competing Priorities

The Service asserts it has discretion to prioritize its workload and contends that forcing a rushed decision on the Petition will simply be pushing the squirrel to the front of the line. CBD counters that competing priorities cannot provide the basis for the Service's unreasonable delay. Moreover, Plaintiffs point out there is no evidence that deciding the petition "will negatively impact other interests." (Doc. 13 at 32.) Moreover, CBD points out that the Service has "updated the Workplan seven times since September 2016" and has never included the squirrel's critical habitat revision in the Workplan at all, despite 331 species being included. (Doc. 19 at 16.) In addition, CBD claims the Service is contributing to the delay by creating two conditions precedent to the resolution of the Petition. CBD also states that other cases cited by the Service are distinguishable because in those the species were already on the Workplan, and the plaintiff was seeking to have the deadlines shortened. Here, the squirrel has not even made it to the Workplan in the seven years since the Petition, CBD notes.

The Service says this is a distinction without a difference, it still has the right to prioritize its workload, and it has chosen to prioritize species who have not yet received the same amount of protection that the squirrels enjoy. The Service claims it has made strides to allocate resources for the squirrel; it completed a five-year status review and a draft SSA and is now receiving internal feedback. After that, the Service plans to invite

peer review from experts. Once peer review is over, "the scope and substance of the feedback received will dictate the remaining timeline to finalize the SSA" and the Revised Recovery Plan. (Doc. 15-1 at 25–26.) The Service expects the SSA to be finalized September 30, 2025 and the Revised Recovery Plan by September 30, 2026.

"[T]he autonomy and comparative institutional advantage of the executive branch has traditionally made courts slow to assume command over an agency's choice of priorities." *In re Barr Labs, Inc.*, 930 F.2d 72, 74 (D.C. Cir. 1991) (citation omitted). In addition, the courts are cautious to enforce deadlines "simply to force its matter to the front of the line." *In re United Mine Workers of Am. Int'l Union*, 190 F.3d 545, 553 (D.C. Cir. 1999). And yet, petitions must still be determined on their merits on a timely basis. *Biodiversity Lgl. Found.*, 285 F. Supp. 2d at *11. In addition, when an agency cannot make a decision within a reasonable time "because of steps it has added to the process, it is fair to question whether the agency's hands really are tied." *Vanda Pharms., Inc. v. U.S. FDA*, No. 1:22-cv-2775, 2024 WL 307387, at *6 (D.D.C. Jan. 26, 2024).

This factor weighs in somewhat in favor of the Service, they are managing the allocation of resources for several species, both listed and currently unlisted. The Court acknowledges that the Service has a monumental task of protecting endangered species given the budget and workforce cuts discussed in oral argument. This balancing act is highly complex and typically left to the Service to decide. However, it does not mean that the Service can prolong a ruling on the Petition indefinitely and the Court acknowledges that the Service has created its own additional requirements prior to determination on the merits of the Petition.

### e. TRAC Factor # 6: Impropriety

"[T]he court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed . . . However, . . . [i]f the court determines that the agency [has] delay[ed] in bad faith, it should conclude that the delay is unreasonable." *Indep. Mining Co., Inc. v. Babbitt*, 105 F.3d 502, 510 (9th Cir. 1997) (citations and quotation marks omitted).

Both parties agree that there is no impropriety, and it is not necessary to find

- 10 -

impropriety to find a delay unreasonable. This factor is neutral.

Overall, the Court finds the TRAC factors weigh in favor of CBD. The Service's delay in deciding the Petition on the merits is unreasonable.

## II. Appropriate Court Action

CBD argues under the APA, the only appropriate remedy is to order the Service to provide a decision. CBD asks that the Court order that within four months, the Service resolve the Petition by issuing a proposed rule to revise critical habitat or denying the Petition.

The Service states that if the Court determines this case is subject to judicial review, the Court "does not have authority under the APA to order specific relief." (Doc. 15-1 at 33 (citing *Palisades Gen. Hosp. v. Leavitt*, 426 F.3d 400, 403 (D.C. Cir. 2005)) The Service contends the appropriate measure is to remand to the Service "with instructions for further explanation." (*Id.* at 26–27.) The instructions could include (1) a certain date to begin work on the revision, and (2) an estimate for how long the revision will take. (Doc. 23 at 15 (citing *Biodiversity Legal Found.*, 285 F. Supp. 2d at 17.))

However, the Court finds that remanding for instruction is unnecessary, as the Service has already provided a timeline to finalize the SSA and the Revised Recovery Plan—this guides the Court's timing for a determination on the Petition. The Court can therefore "evaluate the challenged agency action on the basis of the record before it." *See Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985).

Given that it has been nearly four years since the 12-month report, and the Service has not been able to complete either the SSA or the Revised Recovery Plan, it is unlikely the Service can finish the peer review for the SSA, create a new Revised Recovery Plan, open it to comment, and finalize the plan within CBD's proposed four-month deadline. The Service believes these determinations are crucial to its final determination on the Petition.

However, the Service has provided a timeline for these measures, and the Court will allow an additional four months (as requested by CBD) for a determination on the Petition on the merits. The Revised Recovery Plan is set to be completed by September

30, 2026. The Court will set a deadline for January 30, 2027—four months from the anticipated completion of the Revised Recovery Plan—to provide a response to the Petition, either through a proposed rule to revise critical habitat or a final decision denying the Petition. This deadline is reasonable. It is of note, however, that the granting or denying of the Petition is not dependent upon the Service's *actual* completion of the Revised Recovery Plan. It is a deadline for *either* a denial *or* the proposed revision. Because there has already been an unreasonable delay in deciding the Petition, the Court will not entertain extensions to this deadline or further delay. Agency action on the Petition must occur by this time, whatever that action may be.

Therefore, THE COURT FINDS that the Service has unreasonably delayed a final response to CBD's December 14, 2017 Petition to revise critical habitat for the Mount Graham red squirrel.

IT IS ORDERED:

1) Plaintiffs' Motion for Summary Judgment is GRANTED IN PART as provided herein. (Doc. 13.)
2) Defendants' Cross-Motion for Summary Judgment is DENIED. (Doc. 15.)
3) Defendants U.S. Fish and Wildlife Service and Deb Haaland shall have until January 30, 2027 to provide a response to the Petition through either a proposed rule to revise critical habitat or a final decision denying the Petition.
4) The Clerk of Court is instructed to close this case.

Dated this 7th day of July, 2025.

Honorable Raner C. Collins
Senior United States District Judge